**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MATTEWS INTERNATIONAL, CORPORATION, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 11-269 |
| | ) | Judge Nora Barry Fischer |
| BIOSAFE ENGINEERING, LLC, And DIGESTOR, LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

## I.  INTRODUCTION

Matthews International Corporation ("Matthews" or "Plaintiff") brings this action against

BioSafe Engineering, LLC and Digestor, LLC (collectively, "BioSafe" or "Defendants")[1] for

declaratory judgment of non-infringement with respect to U.S. Patent Nos. 5,332,532 (the "'532

patent"), 6,437,211 (the "'211 patent"), 6,472,580 (the "'580 patent"), 7,829,755 (the "'755

patent) (collectively, the "Method Patents"), and 7,910,788 (the "'788 patent" or "System

Patent"). (*See* Docket No. 24 at ¶¶ 94-100). Matthews also alleges invalidity and

unenforceability of the Method Patents and the System Patent. (*Id.* at ¶¶ 101-111). Matthews

raises additional state law claims of trade libel, defamation, and tortious interference with

prospective contracts. (*Id.* at ¶¶ 112-141). Matthews therefore requests that this Court: declare

that Matthews does not infringe any of BioSafe's rights; declare that BioSafe's patents are

invalid or unenforceable; enjoin BioSafe from making statements or accusations regarding

---

[1] The Court will only refer directly to Digestor when necessary to distinguish between BioSafe
and Digestor.

Matthews's infringement of BioSafe's intellectual property rights; and award Matthews compensatory and punitive damages, including fees and costs. (*Id.* at pp. 24-25).

BioSafe brings the present Motion to Dismiss Plaintiff's First Amended Complaint. (Docket No. [25]). BioSafe makes two broad arguments in support of this motion. First, with respect to Matthews's claims of non-infringement, invalidity, and unenforceability (Counts I-III), BioSafe argues that Matthews has failed to state a "case or controversy" as required by the Declaratory Judgment Act and Article III of the Constitution, such that dismissal is appropriate under Rule 12(b)(1). (*See* Docket No. 26 at 5-15). Second, BioSafe argues that Counts IV-VI should be dismissed under Rule 12(b)(6) for failing to meet the pleading standards set forth by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008) and *Ashcroft v. Iqbal*, 556 U.S. 871 (2009). (*See* Docket No. 26 at 15-20).

At its most basic, the patent portion of this motion challenges whether this Court has jurisdiction over a declaratory judgment action where the declaratory plaintiff cannot possibly be liable for direct infringement and no direct infringement has occurred such that the declaratory plaintiff could be found liable for indirect infringement. As to the state law claims, the question raised is whether Matthews' pleadings have satisfied the standards for Rule 12(b)(6).

The motion [25] is fully briefed, and is therefore ripe for disposition. For the following reasons, this Court finds BioSafe's arguments persuasive, and BioSafe's motion to dismiss (Docket No. [25]) will therefore be GRANTED.

## II. BACKGROUND

### a. Factual Background[2]

---

[2] In determining whether dismissal is proper, a court is required to accept as true all well-pleaded allegations of fact, construed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1321-22 (Fed. Cir. 1998);

Matthews is active in the cremation industry. (Docket No. 24 at ¶ 2). The company currently offers an environmentally-friendly alternative to flame-based cremations. (*Id.* at ¶ 3). This alternative is an alkaline hydrolysis process. (*Id.* at ¶ 4). BioSafe is a competitor to Matthews. (*Id.* at ¶5).

Alkaline hydrolysis is a process whereby material is subject to sodium or potassium hydroxide and heat. (*Id.* at ¶ 23). The chemical reaction "reduce[s]" the original material to a sterile solution that can be easily disposed. (*Id.*). Matthews points to U.S. Patent No. 394,982 as evidence that the alkaline hydrolysis process has been in use in the United States since the nineteenth century. (*Id.* at ¶ 24).

Resomation is a Scottish corporation that manufactures and licenses alkaline hydrolysis equipment for cremation of human remains. (*Id.* at ¶ 25). Resomation has granted Matthews an exclusive license to market and sell Resomation's alkaline hydrolysis equipment in the United States. (*Id.* at ¶ 26). Matthews has made substantial investments in marketing the Resomation equipment, under the brand name Bio Cremation[TM] ("Bio Cremation"), to funeral directors and others for the disposal of human remains. (*Id.* at ¶¶ 27-30).

---

*Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). However, BioSafe disputes the appropriateness of this rule, arguing instead that a factual attack on the Court's jurisdiction under Rule 12(b)(1) is not subject to the requirement that facts be construed in favor of the nonmovant. (*See* Docket No. 26 at 5) (citing *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *Burns v. Alexander*, 2011 U.S. Dist. LEXIS 22200 (W.D. Pa. March 4, 2011)). BioSafe argues that, in a factual challenge to jurisdiction, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891.

This argument ignores another statement by the *Mortensen* Court: "[I]t is incumbent upon the trial judge to demand less in the way of jurisdictional proof [at an early stage of litigation] than would be appropriate at a trial stage." *Id.* at 892. For this reason, the Court will derive its facts largely from the First Amended Complaint, except where BioSafe has produced indisputable facts in contradiction to said Complaint.

Digestor is the current assignee of the Method Patents and System Patent. These patents each have unique limitations. The '532 patent, for example, is limited to an application of an alkaline hydrolysis process to "animal tissue containing radioactive materials." *See* '532 patent at Abstract.[3] The inventors listed on the '532 patent were Gordon I. Kaye ("Kaye") and Peter B. Weber ("Weber"). *See* '532 patent. This patent was initially assigned to Waste Reduction by Waste Reduction, Inc ("WR2"). *Id.* The '532 patent is currently assigned to Digestor. (Docket No. 24 at ¶ 34). The remaining patents-in-suit are also assigned to Digestor. (*Id.* at ¶36).

### i. The Installations

Through the 1980s and early 1990s, Kaye was employed or affiliated with the Albany Medical Center ("AMC") in Albany, New York. (*Id.* at ¶ 41). In January 1994, AMC installed alkaline hydrolysis equipment for the disposal of radioactive animal tissue. (*Id.* at ¶¶ 42-43). AMC rarely used the hydrolysis equipment to dispose of radioactive waste, so they expanded their use of the equipment to non-radioactive animal waste and "regulated medical waste" with potentially infectious agents. (*Id.* at ¶ 45). Also in 1994, AMC began to use the hydrolysis equipment on waste formaldehyde and glutaraldehyde, which Matthews characterizes as "hazardous wastes." (*Id.* at ¶ 47).

By April 1996, at the latest, a WR2 alkaline hydrolysis unit had been installed and put into operation at Shands Hospital in Gainesville, Florida. (Docket No. 24 at ¶ 48). According to Matthews, this unit (and another one installed around April 1998) were used to dispose of human remains, as well as animal carcasses and hospital anatomic material. (*Id.* at ¶¶ 49-51).

### ii. The Applications for the '580 and '211 Patents

---

[3] Matthews calls the Court's attention to similar limitations in the other patents-in-suit. (*See* Docket No. 24 at ¶¶ 37-40).

Kaye and Weber filed Application No. 09/171,447 on October 20, 1998. *See* '580 patent. Application No. 09/882,806 was filed as a continuation-in-part of the initial application. *See* '211 patent. These Applications matured into the '580 and '211 patents, respectively. *See* '580 patent, '211 patent.

In March 2000, the United States Patent and Trademark Office ("PTO") rejected the claims set forth in the 09/171,447 Application as anticipated by, and/or obvious due to prior patents, including the '532 patent. (Docket No. 24 at ¶ 54). The PTO's rejection was premised upon the reasoning that it would have been obvious to one skilled in the art that, if the alkaline hydrolysis process safely sterilized radioactive biological material, it would also safely sterilize regulated medical waste, including infectious agents and other hazardous materials. (*Id.*). After several unsuccessful attempts to persuade the PTO to grant the claims as filed, Kaye and Weber amended the claims and filed a sworn declaration alongside the Amendment. (*Id.* at ¶¶ 55-58). The declaration stated that one skilled in the art would not look to a method of disposing of radioactive material in order to dispose of infectious waste. (*Id.* at ¶¶ 60-61).

### iii. Alleged Accusation of Infringement

Matthews claims that BioSafe has accused Matthews of patent infringement. (Docket No. 24 at ¶¶ 72-74). Matthews states that, in late December, 2008, BioSafe's then-president Bradley Crain ("Crain") spoke with Steven Schaal ("Schaal"), President of the North American Region of Matthews' Cremation Division. (*Id.* at ¶ 75). According to Matthews, Crain asserted that Matthews' Bio Cremation equipment would infringe BioSafe's intellectual property rights. (*Id.* at ¶ 75). Matthews sent a letter, dated December 31, 2008, to confirm the conversation between Crain and Schaal. (*Id.*).

On February 2, 2009, BioSafe's outside counsel responded with another letter. (*Id.* at ¶ 76). Matthews states that this letter refers to multiple BioSafe patents, and suggests that BioSafe could pursue a "variety of remedies" for "disputes involving intellectual property rights," including alleged "patent infringement." (*Id.*). Matthews responded to this letter. (*Id.* at ¶ 78). Since this response, BioSafe has taken no action to pursue a claim of infringement. However, it has not retracted its accusations. (*Id.* at ¶¶ 78-82).

### iv. Other Allegations

Beyond the possibility of patent infringement, Matthews claims that BioSafe has made allegations of Matthews' patent infringement to potential customers. (Docket No. 24 at ¶ 85). Matthews points to several instances where BioSafe has told Matthews' customers, or potential customers, that Matthews has violated BioSafe's patents. (*See id.* at ¶¶ 86-90).

Matthews filed this suit on February 28, 2011. (*See* Docket No. 1). The System Patent, U.S. Patent No. '788, issued less than a month later, on March 22, 2011. (*See* Docket No. 24-7). Matthews then filed an Amended Complaint on May 13, 2011, (Docket No. 24), and BioSafe moved for dismissal on May 27, 2011. (Docket No. 25). Briefing ensued. (*See* Docket Nos. 26, 29, 30, 33).

### b. The Parties' Arguments

In its opening brief, BioSafe first argues that this Court lacks jurisdiction to hear Counts I through III, which pertain to the validity, enforceability, and infringement of the patents. (Docket No. 26 at 1). It argues that Matthews is seeking an advisory opinion, and that the case and controversy is not yet ripe. (*Id.*). Specifically, BioSafe claims that the method patents have not yet been infringed and that the Bio Cremation equipment can operate outside the parameters set by the Method Patents. (*Id.*). Likewise, the System Patent had not yet issued when Matthews

initiated the suit, so any alleged accusations of infringement could not have occurred. (*Id.*). Thus, the Court would not have jurisdiction over the case under the Declaratory Judgment Act. (*Id.*). As to the remaining Counts IV through VI, for trade libel, defamation, and tortious interference, BioSafe argues that the Counts are impermissibly vague or conclusory, and therefore cannot satisfy the "*Twombly/Iqbal* pleading standards." (*Id.* at 2). Thus, argues BioSafe, the Amended Complaint should be dismissed. (*Id.*).

Matthews responds that there is an actual case or controversy, such that the Court has proper jurisdiction. (Docket No. 29 at 5). Matthews maintains that BioSafe has made both direct and indirect accusations of infringement against Matthews. (*See id.* at 8-10). Moreover, Matthews argues that its Amended Complaint satisfies the requirements of Rule 8, *Twombly*, and *Iqbal*. (*Id.* at 14-19). Therefore, Matthews claims that dismissal is inappropriate. (*Id.* at 19).

## III. LEGAL STANDARD

### a. Rule 12(b)(1)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject-matter jurisdiction over the plaintiffs' claims. FED. R. CIV. P. 12(b)(1). "At issue in a Rule 12(b)(1) motion is the court's 'very power to hear the case.'" *Judkins v. HT Window Fashions Corp.*, 514 F.Supp.2d 753, 759 (W.D.Pa. 2007), quoting *Mortensen v. First Federal Savings & Loan Association*, 549 F.2d 884, 891 (3d Cir. 1977). Under the Declaratory Judgment Act, a party has standing to bring an action only if an "actual controversy" exists. 28 U.S.C. § 2201(a). This "actual controversy" "is the same as an Article III case or controversy." *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41 (1937)). "The burden is on the party claiming declaratory judgment jurisdiction to establish that an Article III case or controversy

existed at the time the claim for declaratory relief was filed." *Arris Group, Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011) (citing *King Pharm., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1282 (Fed. Cir. 2010); *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007)). To this end, "[a] trial court may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint." *Ferreiro v. United States*, 350 F.3d 1318, 1324 (Fed. Cir. 2003) (citing *Moyer v. United States*, 190 F.3d 1314, 1317-18 (Fed. Cir. 1999); *Reynolds v. Army Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988)).

### b. Rule 12(b)(6)[4]

In light of the United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008); *Juniper Networks, Inc. v. Shipley*, 643 F.3d 1346, 1350 (Fed. Cir. 2011) (both quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___U.S.___, ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). This standard requires more than "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The complaint must allege a sufficient number of facts "to raise a right to relief above the speculative level." *Id.* This requirement is designed to facilitate

---

[4] Because "[a] motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural question not pertaining to patent law," the Court of Appeals for the Federal Circuit follows the law of the regional circuit. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355-56 (Fed. Cir. 2007). Thus, the law of the United States Court of Appeals for the Third Circuit is controlling.

the notice-pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of [a] claim *showing* that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2)(emphasis added). "In determining if the standard has been met, courts should consider the specific nature of the claim presented and the facts pled to substantiate that claim." *Cuturilo v. Jefferson Regional Medical Center*, Civ. No. 10-1723, 2011 WL 2941031 (W.D.Pa. July 20, 2011) (citing *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 320, n.18 (3d Cir. 2010)).

In considering a motion to dismiss filed pursuant to Rule 12(b)(6), the Third Circuit accepts all of the plaintiff's allegations as true and views all reasonable inferences drawn from those allegations in the light most favorable to the plaintiff. *Buck v. Hampton Township School District*, 452 F.3d 256, 260 (3d Cir. 2006). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

## IV. ANALYSIS

### a. Method Patent Claims

The primary question under BioSafe's instant motion is whether this Court has subject matter jurisdiction over Matthews' patent claims. (Docket No. 26 at 1) (asserting that "[t]he

Court lacks subject matter jurisdiction to hear the declaratory judgment Counts I-III…"). The Court concludes that it does not.

Until recently, the Federal Circuit applied a two-prong test to determine whether jurisdiction was proper in declaratory judgment actions. *See Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 879 (Fed. Cir. 2008). The first prong looked to whether the *patentee* had created a "reasonable apprehension" of suit in the mind of the declaratory plaintiff. *Id.* The second prong focused on the declaratory plaintiff's conduct, specifically whether there had been "meaningful preparation" to conduct potentially infringing activity. *Id.*

In *MedImmune, Inc. v. Genentech, Inc.*, the Supreme Court rejected the first prong of the Federal Circuit's standard for declaratory judgment standing insofar as it required a "reasonable apprehension of imminent suit." 549 U.S. 118, 132 n. 11 (2007); *see also ABB Inc. v. Cooper Indus., LLC*, 635 F.3d 1345, 1347-48 (Fed. Cir. 2011) (recognizing *MedImmune*'s rejection of the reasonable apprehension test); *Cat Tech*, 528 F.3d at 879-80. "Under the [Supreme] Court's new standard, an Article III case or controversy exists when 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Arris Group, Inc. v. British Telecommunications PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011) (citing *MedImmune*, 549 U.S. at 127). The dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," such that the dispute is "real and substantial" and "admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune*, 549 U.S. at 127 (internal quotations and citations omitted). Despite the Supreme Court's clear rejection of the "reasonable apprehension" prong, the second prong of the

Federal Circuit's original test – the "meaningful preparation" prong – remains a critical consideration in determining, under all the circumstances, whether there is a justiciable case or controversy. *Cat Tech*, 528 F.3d at 880.

Although the Supreme Court has held that purely economic injury may confer declaratory judgment standing in cases challenging government actions, *see Craig v. Boren*, 439 U.S. 190, 194-95 (1976), the Federal Circuit has not found that purely economic injury is sufficient to confer standing in patent cases seeking declaratory judgment. *Arris*, 639 F.3d at 1374. It is, thus, insufficient in a patent case simply to plead that a declaratory defendant's actions have caused economic harm. Instead, under *MedImmune*, the Federal Circuit has found that an "adverse legal interest" requires a dispute pertaining to a *legal right*. *Arris*, 639 F.3d at 1374 ("An 'adverse legal interest' requires a dispute as to a legal right-for example, an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring."). Where there is an absence of adverse legal interests, economic injury alone is insufficient to create declaratory judgment jurisdiction. *Id.* at 1374-75; *Aralac, Inc. v. Hat Corp. of Am.*, 166 F.2d 286, 295 (3d Cir. 1948) ("Where a person is not engaged in *possible* infringing conduct … he lacks an interest in a controversy to support an action for declaratory judgment relief to test the validity of a patent… An economic interest is not enough to create justiciability.") (emphasis added).

Accordingly, the Court must determine whether Matthews has made "meaningful preparation[s]" toward potentially engaging in infringing activities. Because the Court finds that Matthews has not taken such steps, as discussed below, the Court is compelled to find that it lacks jurisdiction to decide this case as the facts stand, at present.

### i. Direct Liabiliity

In the context of direct infringement, standing to bring a declaratory judgment action is typically clear. The Federal Circuit has held that, post-*MedImmune*, "the issue of whether there has been meaningful preparation to conduct potentially infringing activity remains an important element in the totality of circumstances which must be considered in determining whether a declaratory judgment is appropriate." *Cat Tech*, 528 F.3d at 880. The *Cat Tech* Court looked to three considerations in its analysis: immediacy, reality, and the discretion of the district court. *Id.* at 881-84.

### 1. Immediacy

"A party may not obtain a declaratory judgment merely because it would like an advisory opinion on whether it would be liable for patent infringement if it were to initiate some merely contemplated activity." *Cat Tech*, 528 F.3d at 881 (quoting *Arrowhead Indust. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988)). For example, in *Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1346-50 (Fed. Cir. 2007), the Federal Circuit affirmed dismissal of a declaratory judgment action where a party planned to engage in certain activities, but those activities could not be considered infringing until other hypothetical steps took place – namely, the filing of a new drug application with the FDA. *Id.* at 1346.

In this case, Matthews has taken no steps towards direct infringement of the Method Patents. Matthews simply manufactures equipment; it does not practice any of the methods or processes at issue here. (*See* Docket No. 24 at ¶ 13) (describing Matthews' manufacturing activities). Matthews has not alleged that it intends to begin operating its equipment, thereby practicing a method, such that it could potentially be found liable for direct infringement of the Method Patents. *See Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 953 F.2d 1360,

1374 (Fed. Cir. 1991), *cert. denied*, 506 U.S. 817 (1992) (holding that method claims are not directly infringed by the mere sale of an apparatus capable of performing the claimed process); *cf. Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1333 (Fed. Cir. 2008) ("Infringement of a method claim 'occurs when a party performs *all* of the steps of the process.'") (citing *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379 (Fed. Cir. 2007)) (emphasis added); *Joy Technologies, Inc. v. Flakt*, 6 F.3d 770, 773-74 (Fed. Cir. 1993) (citing multiple cases for same). Hence, this case, insofar as direct infringement is concerned, lacks the immediacy to establish a case or controversy under the Constitution.

## 2. Reality

The question of reality is governed by "the extent to which the technology in question is 'substantially fixed' as opposed to 'fluid and indeterminate' at the time declaratory relief is sought." *Cat Tech*, 528 F.3d at 882 (citing *Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc.*, 363 F.3d 1361, 1379 (Fed. Cir. 2004)). "The greater the variability of the subject of a declaratory-judgment suit, particularly as to its potentially infringing features, the greater the chance that the court's judgment will be purely advisory, detached from the eventual, actual content of that subject-in short, detached from eventual reality." *Sierra*, 363 F.3d at 1379. In *Cat Tech*, for example, the Federal Circuit found the reality element satisfied because the four configurations of its design that Cat Tech planned to use were "substantially fixed." *Cat Tech*, 528 F.3d at 882. Moreover, these four configurations covered "virtually *all* of the reactor configurations that might be encountered at customers' facilities." *Id.* (emphasis in original). Cat Tech's designs were therefore sufficient to satisfy the reality requirement.

Here, unlike in *Cat Tech*, the parameters used in the operation of Matthews' devices are not settled. BioSafe has stated that Matthews' equipment "can be operated with parameters

outside of the various ones specified" in the patents at issue, (Docket No. 26 at 1), and Matthews does not appear to contest this statement.[5] Thus, the changeable operating parameters do not satisfy the reality standard because the potentially infringing features are "variab[le]," *Sierra*, 363 F.3d at 1379, "fluid and indeterminate," *id.*, or "vaguely defined." *Benitec*, 495 F.3d at 1349. This suit therefore lacks the necessary reality to satisfy the constitutional requirements for declaratory judgment jurisdiction.

### 3. Discretion

Even if both the immediacy and reality elements were satisfied, the exercise of declaratory judgment authority lies at this Court's discretion. *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1383 (Fed. Cir. 2007); *Cardinal Chem. Co. v. Morton, Int'l, Inc.*, 508 U.S. 83, 95 n. 17 (1993). "When there is no actual controversy, the court has no discretion to decide the case. When there is an actual controversy and thus jurisdiction, the exercise of that jurisdiction is discretionary." *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 634 (Fed. Cir. 1991). "In deciding whether to entertain a declaratory judgment request, a court must determine whether resolving the case serves the objectives for which the Declaratory Judgment Act was created." *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004); *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813-14 (Fed. Cir. 1996). Forcing a competitor to make a "choice between abandoning his rights or risking prosecution[] is 'a

---

[5] Matthews does state, in its response brief, that the "technical specifications" of its equipment are "not fluid or indeterminate." (Docket No. 29 at 3). There are two reasons the Court is not persuaded by this statement. First, BioSafe has not argued that the *specifications* of the system are variable. Certainly, the specifications of the systems are set: the equipment can only operate over a given temperature range, a given pressure range, a given pH range, etc. However, BioSafe's argument is directed towards the *actual operating parameters* within the specification ranges. Matthews has not challenged the fact that the *actual operating paramaters* are not fixed. Moreover, the bald repetition of magic language – "not fluid or indeterminate" – is nothing more than legal conclusion, and therefore need not be considered by the Court. *Morse*, 132 F.3d at 906, n. 8.

dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'"

*MedImmune*, 548 U.S. at 129 (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152 (1967)).

Here, the Court has determined that there is no actual controversy at present, so it has no discretion to decide the case. *Spectronics*, 940 F.2d at 634.

### ii. Indirect Liability

Turning to indirect liability, the most instructive case is the aforementioned *Arris* decision. 639 F.3d 1368. The facts of that case were closely analogous to the instant facts. In that case, Arris manufactured certain products for use in Voice over Internet Protocol ("VoIP") systems. *Arris*, 639 F.3d at 1371. British Telecommunications ("BT") alleged that Cable One, Arris' customer, had infringed certain patents by using equipment purchased from Arris to implement VoIP on Cable One's network. *Id.* Cable One's systems combined various Arris products in its functional VoIP system. *Id.*

Although Arris could not be found directly liable for infringement, it was able to demonstrate declaratory judgment jurisdiction under an indirect liability theory. The Federal Circuit summarized the law:

> [W]here a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers.

*Arris*, 639 F.3d at 1375.

Neither party has raised the question of indemnification.[6] Any jurisdiction in this case for indirect liability must, therefore, be premised on a potential theory of secondary infringement[7] by Matthews. The Court need not address the standards for either form of secondary liability in detail as an abbreviated form of the analysis above demonstrates that this Court does not have jurisdiction over the case under any secondary liability theory.

---

[6] Indemnity is defined in similar terms across jurisdictions. *See Valhal Corp. v. Sullivan Associates, Inc.*, 44 F.3d 195, 202 (3d Cir. 1995) (explaining that an indemnity clause requires the indemnitor "to bear the cost of any damages for which the indemnitee is held liable."); *accord Adler's Quality Bakery, Inc. v. Gaseteria, Inc.*, 32 N.J. 55, 159 A.2d 97, 110 (1960) "[Indemnity] is a right which enures to a person who, without active fault on his own part, has been compelled, by reason [of] some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable.") (quoting *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368, 370 (1951)); *see also Lee Way Motor Freight, Inc. v. Yellow Transit Freight Lines, Inc.*, 251 F.2d 97, 99 (10ᵗʰ Cir. 1957) (explaining that indemnity "implies a primary liability in one person, although a second person is also liable to a third party."); *Strong v. Prince George's County*, 77 Md.App. 177, 549 A.2d 1142, 1144 (Ct.Spec.App. 1988) ("Indemnification is an agreement to reimburse one who has been held liable for the amount of his loss."); *AMI Ins. Agency v. Elie*, 394 So.2d 1061, 1062 (Fla.Dist.Ct.App. 1981) (same). The presumption is that an indemnification provision creates "an obligation to a third party that triggers the indemnitor's obligation to the indemnitee." *Longport Ocean Plaza Condominium, Inc. v. Robert Cato & Associates, Inc.*, 137 Fed. App'x 464, 467 (3d Cir. 2005).

[7] The Patent Act provides for two forms of secondary liability – inducing infringement and contributory infringement. *See* 35 U.S.C. § 271(b) (inducing infringement); § 271(c) (contributory infringement). Direct infringement by another party is a necessary predicate to both forms of secondary liability. *See Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003) ("direct infringement … is a prerequisite to indirect infringement."); *see also Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1033 (Fed. Cir. 2002) ("It is well settled that there can be no inducement of infringement without direct infringement by some party."); *Aro Mfg. Co. v. Convertible Top Replacement Co.* ("*Aro I*"), 365 U.S. 336, 341 (1961) ("[T]here can be no contributory infringement in the absence of a direct infringement.").

In the case of inducing infringement, after direct infringement is shown, it must also be shown that the alleged inducer undertook acts constituting inducement, *see, e.g.*, *Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*, 249 F.3d 1341 (Fed. Cir. 2001), and that the accused inducer intended to cause direct infringement. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). As to contributory infringement, it must be shown that the accused contributor knew that the product was especially made or adapted for use in infringement, *Aro Mfg. Co. v. Convertible Top Replacement Co.* ("*Aro II*"), 377 U.S. 476, 488 (1964), and that the good sold is not "suitable for substantial noninfringing use." *See* 35 U.S.C. § 271(c).

While the Court has noted that *Arris* is "the most instructive case," that case is distinguishable on one major point: here, the direct infringement of the supplier's customers *has not occurred*. As Matthews acknowledges, it will not install any of the Bio Cremation units it has sold *until November of 2011*. (Docket No. 29 at 3). Further, BioSafe claims, and Matthews does not adequately dispute, that Matthews' equipment "can be operated with parameters outside of the various ones specified" in the patents. (Docket No. 26 at 1). Assuming the units will be delivered in November, we are still several weeks from the first of two steps necessary for Matthews to have even a plausible argument for declaratory judgment jurisdiction predicated on secondary liability.

While the Court will assume that this first step is certain to occur, the second step requires that Matthews' customers operate the units within the parameters claimed by BioSafe's patents. Whether this step comes to fruition is not guaranteed, but rather, it is "fluid and indeterminate." *See Sierra*, 363 F.3d at 1379. Given the Bio Cremation system's ability to operate outside the parameters claimed by the Method Patents, the lack of information as to the actual operating parameters means that this Court would be providing an advisory opinion specifying what combinations of parameters are infringing and what combinations of parameters are noninfringing. In this Court's estimation, the result would be a wholly advisory opinion, instructing Matthews' customers to use these parameters and not those, which is beyond this Court's jurisdiction to provide. *See MedImmune*, 549 U.S. at 139 (stating that "[t]he declaratory judgment procedure … may not be made the medium for securing an advisory opinion in a controversy which has not arisen.") (quoting *Coffman v. Breeze Corps.*, 323 U.S. 316, 324 (1945)).

Stated succinctly, the Court finds that, because BioSafe could not realistically have brought or threatened to bring suit *yet*, the parties have no "adverse legal interest." *See Arris*, 639 F.3d at 1374 (explaining that "an underlying legal cause of action that the declaratory defendant could have brought or threated to bring" is the type of "adverse legal interest" required by *MedImmune*). Without this adverse legal interest, there is no cognizable case or controversy which could be the basis for this Court exercising jurisdiction. For the foregoing reasons, the Court finds that it does not have jurisdiction over the claims arising under the Method Patents.

### b. System Patent Claims

Having addressed the Method Patents, the Court now turns to the System Patent. As explained below, the Court finds that it cannot exercise jurisdiction over the System Patent.

This suit was filed on February 28, 2011. (*See* Docket No. 1). The System Patent, U.S. Patent No. '788, was issued on March 22, 2011. (*See* Docket No. 24-7). This timing is important in the instant case because "[l]ater events may not create jurisdiction where none existed at the time of filing." *GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996). Thus, a dispute over a yet-to-be-issued patent application is not ripe, and is instead "purely hypothetical." *Id.* at 482.

This is not to say, however, that a later-issued patent may never be added to an action at a later date. Several district courts have found that a later-issued patent may be added by way of a supplemental complaint in certain circumstances. *See, e.g., Intel Corp. v. Amberwave Systems Corp.*, 233 F.R.D. 416 (D.Del. 2005) (Jordan, J.); *Ramsey Group, Inc. v. EGS Intern., Inc.*, 208 F.R.D. 559, 563 (W.D.N.C. 2002); *Cosden Oil & Chem. Co. v. Foster Grant Co., Inc.*, 432 F.Supp. 956, 960 (D.Del. 1977). The key to these holdings appears to be that the court already had proper subject matter jurisdiction prior to the addition of the later-issued patent. *See*

*Amberwave*, 233 F.R.D. at 418-19 ("*GAF does not hold that a case in which subject matter jurisdiction already exists cannot be supplemented by adding a dispute over a later-issued patent.*") (emphasis added).

Here, the Court has found that it does not have proper jurisdiction over the Method Patents. Without this predicate jurisdiction, the later-issued System Patent does not fall within the *Amberwave* exception to the *GAF* rule. The Court may not, therefore, exercise jurisdiction over the System Patent because it did not have jurisdiction over the Method Patents.

### c. State Law Claims

Matthews' Amended Complaint also raises several state law claims. Specifically, Matthews claims that BioSafe's references to its patents in the marketplace give rise to trade libel, defamation,[8] and tortious interference with prospective contract[9] claims. (*See* Docket No. 24 at 20-22).

---

[8] "Trade libel" is defined as "[t]rade defamation that is written or recorded." Black's Law Dictionary at 1530. "Trade defamation" is, in turn, defined as "[t]he damaging of a business by a false statement that tends to diminish the reputation of that business. Trade defamation may be trade libel if it is recorded, or trade slander if it is not." *Id.* at 449. "Defamation" is defined as "[t]he act of harming the reputation of another by making a false statement to a third person… A false written or oral statement that damages another's reputation." Black's Law Dictionary at 448. In Pennsylvania, trade libel and defamation are often treated under the same standard. *See*, *e.g.*, *Fibonacci Group, Inc. v. Finkelstein & Partners, LLP*, 2005 WL 1620388, *5-*6 (Pa.Com.Pl. 2005) (applying the same standard to trade libel and defamation).

[9] According to the Restatement (Second) of Torts §766, tortious interference with contractual relations arises when someone "intentionally and improperly interferes with the performance of a contract … between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." This rule has been adopted in Pennsylvania. *Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 482 Pa. 416, 431 (1978) (citing Restatement (Second) of Torts § 766).

### i. Failure to Plead Bad Faith

Federal patent law preempts state law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patents. *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004); *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999). Bad faith is therefore a necessary element in any state law tort pleading addressing allegations of patent infringement. *Globetrotter*, 362 F.3d at 1374. This finding is rooted in the simple concept that a patent holder should be able to communicate with possible infringers without the risk of state liability. *See Concrete Unlimited Inc. v. Cementcraft, Inc.*, 776 F.2d 1537, 1538 (Fed. Cir. 1985) (a "patent owner has the right to … enforce its patent, and that includes threatening alleged infringers with suit."); *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) ("Federal precedent is that communications to possible infringers concerning patent rights is not improper if the patentholder has a good faith belief in the accuracy of the communication."); *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997) ("[A] patentee must be allowed to make its rights known to a potential infringer so that the latter can determine whether to cease its allegedly infringing activities, negotiate a license if one is offered, or decide to run the risk of liability and/or the imposition of an injunction."), *cert. denied*, 525 U.S. 815 (1998); *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 709 (Fed. Cir. 1992) (stating that a patentholder "that has a good faith belief that its patents are being infringed violates no protected right when it so notifies infringers.").

Bad faith contains both an objective and a subjective component. *Mikohn*, 165 F.3d at 897. The subjective component requires a showing that the patentee demonstrated subjective bad faith in enforcing its patent. *Globetrotter*, 362 F.3d at 1375. "Subjective considerations of bad faith are irrelevant if the [challenged] assertions are not objectively baseless." *GP Indus., Inc. v.*

*Eran Indus., Inc.*, 500 F.3d 1369, 1375 (Fed. Cir. 2007) (citing *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)).

Thus, the bad faith standard cannot be satisfied "in the absence of a showing that the claims asserted were objectively baseless." *Globetrotter*, 362 F.3d at 1375. Objective baselessness can be demonstrated by a showing that the patents at issue are "obviously invalid or plainly not infringed." *Id.*; *see also Zenith*, 182 F.3d at 1354 ("Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith is made out."). The point is that the infringement allegations must be such that "no reasonable litigant could reasonably expect success on the merits." *GP Indus.*, 500 F.3d at 1374. "[B]ad faith is not supported when the information is objectively accurate." *Mikohn*, 165 F.3d at 897. "Communication of accurate information about patent rights, whether by direct notice to the potential infringers or by publicity release, does not support a finding of bad faith." *Id.* at 898.

Here, in general, Matthews has only averred that BioSafe made allegations of Matthews' infringement to Matthews' potential customers. (*See* Docket No. 24 at ¶¶ 59, 83, 86-88). Although the Court has held that Matthews could not possibly be held liable for direct infringement, it appears objectively reasonable for BioSafe to assert that Matthews' equipment would infringe BioSafe's patents once that equipment is in the hands of Matthews' customers. Moreover, it appears that statements made to Matthews' potential customers would warn them of the potential for them to infringe BioSafe's patent rights if they purchased Matthews' equipment. Because the Court has determined that it does not have jurisdiction to resolve the actual merits of this case at the present time, it finds that communication of such objectively accurate information is not, on its face, bad faith.

Since the mere fact of BioSafe's assertions of infringement does not constitute bad faith, *Mikohn*, 165 F.3d at 898, the onus is on Matthews to plead bad faith in some other manner. Matthews certainly has attempted to do so by way of its bald and repeated assertions that BioSafe acted in "bad faith." (*See* Docket No. 24 at ¶¶ 59, 83, 114, 128, 138). Matthews also avers that BioSafe acted with reckless disregard to the falsity of its accusations or that BioSafe was somehow aware of the falsity of its statements. (*Id.* at ¶¶ 117, 129, 136). In addressing a motion to dismiss, however, the Court "need not credit a complaint's 'bald assertions' or 'legal conclusions.'" *Morse*, 132 F.3d at 906. Something more is therefore necessary. *See Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, this Court is not required to accept that BioSafe's "whispering campaign," (Docket No. 24 at ¶ 83), in which it apparently only engaged in the protected practice of alleging infringement against customers who could potentially be found liable upon purchase and operation of Matthews' equipment, was done in bad faith.

As BioSafe recognizes, the closest Matthews comes to meeting its burden of making more than a bald assertion is when it alleges that the "inventors/applicants for the patents ('211, '580, '453, '755, and '788) now held by BioSafe/Digestor engaged in inequitable conduct." (*See* Docket No. 26 at 17, quoting Docket No. 24 at ¶ 107). In this Court's mind, the Amended Complaint has satisfied the requirement that "inequitable conduct… must be pled with particularity." *Ferguson Beauregard/Logic Controls, Division of Dover Resources, Inc. v. Mega Systems, Inc.*, 350 F.3d 1327, 1344 (Fed. Cir. 2003); *accord Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007). However, these allegations are not tied in any way to the present declaratory defendants. (*See* Docket No. 24 at ¶¶ 53-71). Nowhere does Matthews state that BioSafe was aware of this conduct, such that its

assertions in the marketplace could be considered bad faith. At best, of the five patents Matthews referenced as having been obtained through inequitable conduct,[10] BioSafe purchased three of the patents (the '211, '580, and '453 patents) after issuance, so it was not party to the prosecution of those patents. Moreover, four of the five patents ('755, '788, '211, and '580) claim priority to an April 22, 1996 provisional application. *See* '755 Patent, col. 1 lns 16-17; '788 Patent, col. 1 lns. 15-16; '211 Patent, col. 1 lns. 11-12; '580 Patent lns. 5-6. Matthews cited a 1998 article by the inventors as evidence of bad faith, but this article was published *after* the priority date of many of the patents at issue. (*See* Docket Nos. 24, 24-11). Although the fifth patent, the '453 Patent, only claims priority to January 24, 2001, the Court reiterates that it was not prosecuted by BioSafe.

Given the foregoing, the Court finds that Matthews has failed to properly plead bad faith. Matthews has either pled, in a conclusory fashion, that BioSafe engaged in bad faith acts, or it has pled that a party not privy to this lawsuit has engaged in bad faith conduct. Without more, such allegations do nothing more than raise the "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949. Although the Court does not impose a heightened pleading standard because the Federal Circuit has expressed doubt as to whether state law business tort claims implicate Rule 9(b), *see Scientific Drilling Intern., Inc. v. Gyrodata Corp.*, 1999 WL 674511, *4 (Fed. Cir. 1999), the Court has already explained that it finds that allegations of legal activity coupled with bald assertions of bad faith insufficient to raise even the *plausibility* of bad faith. All that is alleged is the making of accusations of infringement, which activity it is legal for a patentee to undertake, *see Concrete Unlimited*, 776 F.2d at 1538, or that another party

---

[10] Matthews does not appear to assert that the '532 patent was obtained through inequitable conduct, as its inequitable conduct allegations as to the other patents argue that the '532 patent was prior art considered by the PTO. (*See* Docket No. 24 at ¶¶ 54, 55, 58, 61).

engaged in acts *potentially* constituting inequitable conduct, without any averments connecting BioSafe to that conduct. Moreover, several of the patents claim a priority date *before* the 1998 Article cited as the basis for the claims of inequitable conduct. For these reasons, the Court finds that Matthews has failed to state a claim upon which relief can be granted.

### ii. Case or Controversy as to the State Law Claims

The Court also finds that it does not have proper subject matter jurisdiction over the state law claims. Challenges to a federal court's subject matter jurisdiction may be made at any stage of the proceedings, and the court should raise the question *sua sponte. Kontrick v. Ryan*, 540 U.S. 443, 455 (2004) (citing *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). The Court raises this issue both because it is appropriate to do so and because, without addressing this issue, there may be a question of whether the Court initially had proper subject matter jurisdiction over the state law claims, such that the addition of the System Patent claim would still be acceptable as an exercise of the Court's jurisdiction. Because the Court also finds that it lacks subject matter jurisdiction over the state law claims, dismissal of the System Patent is entirely appropriate. *See Amberwave*, 233 F.R.D. at 418-19 ("*GAF* does not hold that a case *in which subject matter jurisdiction already exists* cannot be supplemented by adding a dispute over a later-issued patent.").

Admittedly, even without the patent claims, this Court could possibly have diversity jurisdiction as the parties are of diverse citizenship. (*See* Docket 24 at ¶ 18). However, the Court finds that the state law claims do not properly raise a case or controversy under Article III of the Constitution.

To satisfy the requirements of Article III, a party must satisfy three elements. First, a plaintiff must have standing. *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560 (1992). Second,

the issues presented must be ripe for judicial review. *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). Lastly, the case may not be rendered moot at any stage of the litigation. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980).

Without addressing the first or third elements, the Court finds that the disputes as to the state law claims are not ripe. "Whether an action is 'ripe' requires an evaluation of 'both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Caraco*, 527 F.3d at 1294-95 (quoting *Abbott Labs.*, 387 U.S. at 149). As to "fitness," courts should determine whether further factual development would "significantly advance [a court's] ability to deal with the legal issues presented." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003). As to hardship, the question is whether the "complained-of conduct has an 'immediate and substantial impact' on the plaintiff." *Caraco*, 527 F.3d at 1295 (citing *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 171 (1967)).

Here, the action is not fit for judicial review. Barring discovery of the proverbial smoking gun, further factual development will not "significantly advance" this court's ability to deal with the legal issues presented because the key inquiry, whether the patents are or are not infringed, cannot be resolved at the present time. Factual development will not advance the litigation because the possible direct infringement that would give rise to this Court's jurisdiction over the patent claims *has not yet occurred*, and *may never occur*. This Court, if it were to find that BioSafe did not have an objectively reasonable basis for making allegations of patent infringement, would also effectively be finding that BioSafe could not reasonably expect to succeed on the merits of an infringement action. *GP Indus.*, 500 F.3d at 1374. Because the Court has already held that it does not have jurisdiction to reach the merits, a finding that the Court has jurisdiction over the tort claims would effectively create a loophole through which Matthews

could still assert invalidity (by way of the objective reasonableness analysis) without this Court actually having jurisdiction over the patents at issue.

Moreover, there is little hardship in waiting a few weeks until Matthews has actually delivered its first units and Matthews' customers have used them. Once the facts are actually developed, a suit may be appropriate. At present, however, it is not.

### d. Amendment of the First Amended Complaint

A party may file a Second Amended Complaint "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED.R.CIV.P. 15(a)(2). "[T]his mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Given lack of consent, the question here is whether justice requires this Court to grant Plaintiff leave to amend its Amended Complaint.

The "grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman*, 371 U.S. at 182. "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). There appears to be no concern of bad faith, prejudice, or dilatory motive here, so the Court need only address undue delay and futility.

Delay alone is insufficient to justify denial of leave to amend. *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). "[H]owever, at some point,…delay will become 'undue,' placing an unwarranted burden on the court … [and] an unfair burden on the opposing party." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (quoting *Adams*, 739 F.2d at 868). There is no presumptive period at which an amendment is deemed "timely" or in which delay becomes "undue." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 205 (3d Cir. 2006). Typically, a

finding of undue delay will be rooted in the movant's failure to take advantage of previous opportunities to amend. *Cureton*, 252 F.3d at 273; *Adams*, 739 F.2d at 868.

"Futility" means that the amended complaint would fail to state a claim upon which relief could be granted. *Shane*, 213 F.3d at 115; *Burlington*, 114 F.3d at 1434. A district court must apply the same standard of legal sufficiency as would apply under Rule 12(b)(6). *Shane*, 213 F.3d at 115. Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend must be granted unless the amendment would not cure the deficiency. *Id.*

The Court denies leave for Matthews to again amend its complaint. First, the Court has found that there is no case or controversy under Article III. *See supra* Parts IV.A, IV.B and IV.C.ii. Amendment will not cure this constitutional deficiency. Second, Matthews filed the present Amended Complaint in the wake of Defendants' earlier motion to dismiss. (*See* Docket No. 13). This first motion raised the same inadequacies as the present motion – i.e. lack of jurisdiction and failure to state a claim. (*See* Docket No. 14 at 1). Hence, Matthews was on notice of these deficiencies before it filed its First Amended Complaint. It has therefore had previous opportunity to cure the deficiencies and has done nothing. This failure to appropriately address earlier known deficiencies at the earliest opportunity constitutes undue delay. *See Cureton*, 252 F.3d at 273. Hence, even if amendment would not prove futile for deficiencies under Rule 12(b)(6), the Court would deny leave to again amend the complaint because of undue delay. Moreover, because the Court, under 12(b)(1), considered evidence outside the facts alleged in the Amended Complaint, it does not appear that amendment would cure the lack of a case or controversy at the present time.

## V.  CONCLUSION

For the foregoing reasons, the Court finds that it does not have subject matter jurisdiction over the patent or state law claims raised in Matthews' Amended Complaint. The Court also finds that Matthews has only made conclusory statements as to a critical element – bad faith – of its state law claims. Because the Court lacks subject matter jurisdiction over the claims and Matthews has failed to state a claim upon which relief can be granted with respect to its state law claims, Defendants' motion to dismiss [25] is GRANTED. This suit will be DISMISSED, *without prejudice*.  An appropriate Order shall follow.


*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge


cc/ecf:  All counsel of record

Date: September 27, 2011